(January 31, 1911.)

# WILLIAM A. COUGHANOUR, Appellant, v. GEORGE W. GRAYSON, Respondent.

### [113 Pac. 724.]

MINING CLAIMS—INTEREST IN—AGREEMENT TO SELL—INTEREST IN NET PROFITS—MANAGEMENT—SALE OF—STATUTE OF FRAUDS—PAYMENT OF PURCHASE PRICE.

(Syllabus by the court.)

1. Under the provisions of sec. 6007 of the Rev. Codes, no estate or interest in real property, other than for leases for a term not exceeding one year, nor any trust or power over or concerning it, or in any manner relating thereto, can be created, granted, assigned, surrendered, or declared, otherwise than by operation of law, or a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing.

2. Under the provisions of sec. 6008, Rev. Codes, it is provided, among other things, that the provisions of sec. 6007 must not be construed so as to abridge the power of any court to compel the specific performance of an agreement in case of part performance thereof.

3. *Held,* under the evidence that the plaintiff had paid the full purchase price for a one-seventh interest in the mining claims involved, or in the net proceeds arising from the working or sale thereof.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Fremont Wood, Judge.

Action to recover a one-seventh interest of the net proceeds arising from the sale of certain mining claims. Judgment for the defendant. *Reversed.*

Hawley, Puckett & Hawley, for Appellant.

Several writings of different dates may be read in connection with each other to show a memorandum of an agreement, when taken as a whole. (*Beckwith v. Talbot,* 2 Colo. 639; *Townsend v. Kennedy,* 6 S. D. 47, 60 N. W. 164; *Ide v. Stanton,* 15 Vt. 685, 40 Am. Dec. 698; *Fisher v. Kuhn,* 54 Miss. 480.)

The rule as laid down above is applicable where the contract is made by an agent of the party and the memorandum is signed by him during the existence of his agency. (*White v. Dahrquist Mfg. Co.*, 179 Mass. 427, 60 N. E. 791.)

We desire to call the attention of the court to the statute of frauds, which has been invoked by the answer, and upon which the decision of the lower court is based. Sec. 6007, Rev. Codes, is modified by sec. 6008, "nor to abridge the power of any court to compel the specific performance of an agreement, in case of part performance thereof." (*McGinness v. Stanfield*, 6 Ida. 372, 55 Pac. 1020; *Feeney v. Chester*, 7 Ida. 324, 63 Pac. 192; *Male v. Leflang*, 7 Ida. 348, 63 Pac. 108; *Stowell v. Tucker*, 7 Ida. 312, 62 Pac. 1033; *Francis v. Green*, 7 Ida. 668, 65 Pac. 362; *Barton v. Dunlap*, 8 Ida. 82, 66 Pac. 832; *Grice v. Woodworth*, 10 Ida. 459, 109 Am. St. 214, 80 Pac. 912, 69 L. R. A. 584; *Fleming v. Baker*, 12 Ida. 346, 85 Pac. 1092; *Thompson v. Burns*, 15 Ida. 572, 99 Pac. 111; *Ames v. Howes*, 13 Ida. 756, 93 Pac. 35.)

Cavanah & Blake, for Respondent.

Counsel for plaintiff take the position that there are sufficient memoranda in writing in the shape of letters, telegrams, etc., to show that there was an agreement and what the terms of the agreement were. We contend that all the memoranda taken together are not sufficient to fulfill the requirements of the statute. (*Williams v. Morris*, 95 U. S. 444, 24 L. ed. 360; *Whelan v. Sullivan*, 102 Mass. 204; Wood, Statute of Frauds, sec. 345; *Cooley v. Lobell*, 153 N. Y. 596, 47 N. E. 783.)

The memorandum or writing, whether made at the time or after, must be sufficient within itself, and cannot be aided by parol evidence. (*Ross v. Allen*, 45 Kan. 231, 25 Pac. 570, 10 L. R. A. 835; *Odell v. Montross*, 68 N. Y. 499; *Doty v. Wilder*, 15 Ill. 407, 60 Am. Dec. 756; *Ellis v. Denver Ry. Co.*, 5 Kan. App. 341, 48 Pac. 457; *Darke v. Smith*, 14 Utah, 35, 45 Pac. 1006.)

Nothing was done by plaintiff in this case which in any way could be construed as being part performance of the oral agreement, if there was an oral agreement. (*Burden v. Sheridan*, 36 Iowa, 125, 14 Am. Rep. 505.)

Counsel quote from the syllabus of the case of *Feeney v. Chester*, 7 Ida. 324, 63 Pac. 192. The facts in that case, as well as in every Idaho case cited by counsel, show that there was a part performance of the contract. Counsel for appellant use considerable space in their brief to show the character of services rendered by appellant in the performance on his part of the alleged contract. We can assume for the purposes of this case that appellant performed all the services he claims he did, yet he did nothing that could be construed to be such a part performance of the contract as to entitle him to specific performance on the part of the defendant. If appellant performed any services whatever, he was not without remedy, for he could have brought an action to recover the value of the services.

Although the alleged agreement was void, if appellant performed any services, they could easily be measured in an action at law and a recovery could have been had, as the action would lie on the implied promise to pay for said services. (20 Cyc. Law & Procedure, 299.)

SULLIVAN, J.—This action was originally commenced in the district court of Boise county, and the mining claims referred to herein are situated near Quartzburg in said county. By stipulation of parties the cause was transferred to the Ada county district court for trial. After the transfer, plaintiff, without objection, filed his amended complaint.

The complaint shows, among other things, that on June 12, 1896, the plaintiff, together with Thomas Mootry, Jr., and David E. Coughanour, were, and for more than five years prior thereto had been, the owners of the Pioneer, Gold Hill, Dunlap and the Confederate lode mining claims situated in Granite creek mining district, Boise county; that by reason of trouble between the owners of said mining claims, suit

had been commenced in the district court of said Boise county for the division or sale of said mining claims and a decree had been entered therein directing such sale, which sale was made by the sheriff of that county; that Robert R. Grayson, son of the respondent, prior to the sale, had informed himself with reference to said mining claims and had resolved to purchase them in behalf of himself and the respondent; that plaintiff had for a number of years been the manager in the operation of said mining claims, and prior to the said sheriff's sale said Robert R. Grayson proposed to appellant that he would at said sheriff's sale purchase said mining claims and pay for them and make such expenditures as were necessary for the future development thereof, and in consideration of plaintiff's giving him certain information and advising him as to the proper course of procedure and best method of working them, and assisting him in the working or disposing of said claims, and aiding him to prevent future litigation in regard thereto, he would pay the plaintiff one-seventh of all the profits in the workings of said claims, in the event they were worked, and one-seventh of all moneys or other matters of value derived from the sale thereof, less the expenditures made thereon, and that plaintiff agreed to said proposition and said contract was entered into between him and said Robert R. Grayson who represented himself and the defendant in said matter; that such proceedings were had at such sale that the said Robert R. Grayson bought in said claims for the sum of $4,500 and took a deed therefor; that under such sale the respondent and the said Robert R. Grayson, who is now deceased, frequently advised with the plaintiff in regard to the best procedure and method of working the claims and disposing of them, and in reference to legal complications surrounding them under the terms of said agreement; that afterward, and in the year 1899, the respondent succeeded to the entire interest of said Robert R. Grayson in said mining claims, and since that time and up to the time of selling them to other parties, was the sole owner thereof; that at all times prior to acquiring title to said mining claims in his own name, the respondent was aware of the contract

between plaintiff and his son Robert, and assented thereto, both orally and in writing, and in 1897, at Boise City, Idaho, renewed the contract and agreement made between Robert R. Grayson and the plaintiff with reference to the interest of plaintiff in said mining property; that in August, 1906, the defendant sold and disposed of the property in question, receiving a large sum therefor; that appellant thereafter demanded a settlement or accounting with the respondent, which was refused, and the plaintiff therefore asks as his relief in the action "that the defendant be adjudged to account and pay to plaintiff one-seventh of all amounts received by him from any source in and about said mining claims over and above the amount paid out by him for said claims, or on account thereof."

The respondent answered the amended complaint and denied upon information and belief the ownership of the property in litigation upon the part of plaintiff and his associates and the troubles between them, but admits that a suit was brought for a division or sale of the property; also that prior to the sale of the property, Robert R. Grayson (defendant's son) made examination of the property and avers that he made such examination as defendant's agent, but denies that he was agent in all matters affecting said property; denies on information and belief that the alleged agreement between plaintiff and Robert R. Grayson had ever been made or that plaintiff had ever been superintendent or manager of the mining claims in question or in charge thereof; and all other allegations of a similar nature in the amended complaint; admits that Robert R. Grayson bought said mining claims at sheriff's sale, but alleges that in buying these claims he did so as the agent of defendant and for defendant, and that the defendant was the real owner of said claims and that said Robert R. Grayson was not an owner therein; denies on information and belief that defendant rendered assistance in regard to the working of said claims, attending to lawsuits, etc.; admits that in 1899 the said Robert R. Grayson deeded the property in question to the defendant, but denies that up to that time said Robert R. Grayson had any

interest in the claims and alleges he had been holding them in trust for the plaintiff; denies any knowledge of the agreement between his said son and the appellant with reference to said claims and a renewal on the part of respondent of the agreement between his said son and appellant, and denies generally any right or interest of the plaintiff in or to the claims or the proceeds of them; admits the sale of the mining claims in question as alleged in the complaint, and also demand by plaintiff for an accounting.

The defendant then sets up as a defense new matter to the effect that in 1896 he employed his said son to act as his agent to purchase the property described in the complaint, and that in accordance with said employment, said Robert R. Grayson proceeded to Idaho and bought the property in question; that said Robert had no power to make any contract or agreement of any kind with reference to the property except to purchase the same; that afterward and in 1899, Robert deeded the property to the defendant, and that defendant had never at any time had any knowledge of any agreement between his son and the plaintiff with reference to the property, and never agreed in his own behalf with plaintiff that plaintiff should be interested in said property.

Answering further, the defendant pleads that the pretended agreement set forth in plaintiff's complaint was an agreement creating an interest in real estate, and that the agreement was not in writing and no memorandum or note thereof in writing was signed by the defendant; also alleges that he never made any agreement at any time with plaintiff in regard to said mining claims.

Upon the issues thus made the cause came on for trial before the court without a jury. During the trial the defendant interposed objections to the introduction of any testimony tending to show any estate or interest in said mining claims unless it was first shown that said interest was created, granted or declared by an instrument in writing and subscribed by the parties. The court, under said objection and a number of other similar objections, made a tentative ruling

overruling the objections with the understanding that such objections should be further considered on final argument.

At the conclusion of the evidence, the defendant moved for a nonsuit, which was denied, and thereupon proceeded to put in his testimony. At the close of the evidence the cause was argued and submitted to the court for its decision. Finding of facts was made in favor of the defendant and judgment entered in his favor. A motion for a new trial was overruled and the appeal was taken therefrom.

The decision of the court was based upon the ground that the agreement or contract upon which plaintiff sought to recover in this action is for an interest in real estate which cannot be created other than by operation of law or a conveyance or other instrument in writing subscribed by the party creating it. (Sec. 6007, Rev. Codes.) In rendering that decision upon the evidence, we think the trial court overlooked the provisions of sec. 6008, Rev. Codes, which section is as follows:

"The preceding section must not be construed to affect the power of a testator in the disposition of his real property by a last will and testament, nor to prevent any trust from arising or being extinguished by implication or operation of law, nor to abridge the power of any court to compel the specific performance of an agreement, in case of part performance thereof."

It is expressly declared in that section that the preceding section, to wit, sec. 6007, must not be construed to affect nor to abridge the power of any court to compel the specific performance of an agreement in case of part performance thereof. The evidence clearly shows that plaintiff was to have a one-seventh interest in said mines or the net proceeds thereof in case a sale was made. He had been superintendent in the working of those mines for many years, and for said interest therein he made a detailed report to Robert R. Grayson of the working and development of said mines for seventeen years, giving the output of the mine during that time, the length of tunnels, the working conditions, the product of the mines during that time, the dividends that had

been declared, and everything pertaining to the working of said mines that was in plaintiff's possession. It clearly appears from the evidence that plaintiff rendered valuable services to the respondent, for which services he was to receive a one-seventh interest in said property, or one-seventh of the net proceeds thereof in case of a sale. This was dependent upon Grayson's purchasing said mines at said sheriff's sale, which he did, paying $4,500 therefor.

Appellant testified as follows: "He [referring to Robert R. Grayson] said that in view of what I had done for him, and also of my knowledge of the mine in future workings, etc., was of incalculable value to anyone, and that in view of that he would concede to my wishes." Grayson, after getting all of the information that he could from the plaintiff, and after plaintiff's giving him all the information he had in regard to said property, purchased the same at sheriff's sale for $4,500.

Plaintiff further testified: "I advised with him in regard to the procedure and methods of working these claims and of disposing of them and kindred matters, and in particular as to disposing of the property. He asked me a great many questions as to the workings of the mine, what I thought of the conditions of the mine as to the lower values, and everything that it was possible for a mining man to think of; he wanted to get at the real value of the mines. I continued this advice and these consultations right along after that whenever called upon. At two different times I met with him after that, and when I came down with him after the sale, we talked frequently of the matter in that respect here in Boise, and I recall meeting him twice afterward—once at Payette and once here in Boise, and we spent two or three days here."

The witness also testified as follows: "Grayson agreed that he would carry one-seventh interest nonassessable for me and that all the expenses of the mine, the working of it, if he did work it, and the care of it, everything, should come out of the product of the mines, and that the net proceeds—one-

seventh of the net proceeds, was mine, and that my interest was to be nonassessable.''

A number of letters passed between Robert Grayson and the plaintiff in regard to this transaction. In one he states as follows: ''I want to see you about our action in this matter, but I cannot get to Idaho. My father will see you instead,'' etc. In a letter dated June 14, 1897, George W. Grayson wrote to the plaintiff, stating, ''Robert will treat you as well as he promised.'' On June 16th Robert wrote the plaintiff, among other things, as follows: ''I always thought that your interest in the Gold Hill had been jeopardized by the constant bickerings of Mootry and Dave, and I knew that your assistance and knowledge would be of great benefit to anyone who should eventually get the property. In conformity with my promise to you, I spoke to Mr. G. W. Grayson immediately after I returned home, and he said that he was perfectly willing to carry you an interest, as he would be very glad to have the knowledge and benefit of the information which you had about the property. . . . . You are both men of honor and between such affairs can easily be arranged satisfactorily.''

The defendant in a letter dated April 2, 1902, to the plaintiff stated, among other things, the following: ''I have not heard from you for a long time. The old mine has had many troubles, and it has given me more than I bargained for and the end is not at hand; legal complications are not at an end, and where you and I will come out I cannot now foresee.'' The reference in that letter was clearly to the Gold Hill mines, as there was no other enterprise that they were engaged in at that time. The letter further states: ''Nothing but a success will benefit you, and I don't want to pursue a forlorn hope. Had I better sell and get my money back or work it? I will heed your advice. I will look for an answer and be under many obligations.'' This portion of the letter is certainly an acknowledgment of the agreement between the parties and it is clearly a ratification of that agreement.

In a letter dated December 20, 1905, the defendant wrote to the appellant as follows: ''In relation to the conversation

we had in Mr. W. E. Borah's office in Boise City, in relation to an interest in the Gold Hill mines, Robert Grayson was the legal owner of those mines. I was impressed with the idea that Robert had promised that he would carry for you the interest we spoke of, and I think I got the impression from you, as I don't remember of saying anything to him about the matter until I returned from Boise City after having that conversation. I then told him my promise, and what actuated it. He claimed I should not have done so, as you misunderstood him as he had no reasons for making such a promise and would not stand for it, stating that he would see you and show you where you were wrong. His death prevented his seeing you. Believing I was carrying out his wishes was the prompting cause of my promise to you. When repudiated by him I should be absolved from the same."

The extracts from said letters corroborate the statement of Senator Borah in his testimony in the case and of the plaintiff with reference to the agreement reached on the 21st of June, 1897, between plaintiff and defendant, which was simply a continuation of the agreement between Robert Grayson and the plaintiff made at the time of the sheriff's sale of said mining claims.

There would probably have been no trouble in the matter had Robert Grayson lived, but after his death the respondent evidently concluded that he would repudiate the agreement. Up to the time of Robert Grayson's death, he either held the title to the Gold Hill mines in his own name and was ostensibly an owner therein, or was acting as the agent of his father, and it is clear from the evidence that if he was acting as his agent, the father ratified the contract that he made with the plaintiff.

Senator Borah testified for the plaintiff as follows:

"I cannot fix the time when I first heard Robert Grayson and the plaintiff discussing this matter, but my recollection is that just before the sale took place there was some conversation between Mr. Coughanour and Robert Grayson with reference to the mine—Grayson making inquiries as to its

probable value and getting information from Mr. Coughanour as to his knowledge of the mines and their probable worth and the best way to work it and unwatering it and such as that. This was before Robert Grayson went to buy the mine, and Mr. Coughanour made a report to Robert Grayson of his knowledge of the mine. The details of the report I cannot state because, if I examined it, it has passed from my mind. This first conversation was in Boise City, either in my office or possibly at the hotel. Robert Grayson was here in Boise for several days. Conversations were had on more than one occasion. I know that Mr. Coughanour was in Boise at the time on business with Mr. Grayson. I was representing Mr. Grayson at this time; was in consultation with him. I do not recollect the conversations with reference to the plaintiff saving his interest or having his interest carried, previous to the parties going up to Boise county, although of course it might have taken place before they went. But my distinct recollection is that after they returned they had such conversation. I would not pretend to say it was not mentioned before they went. I remember the matter being discussed in my presence and hearing between Coughanour, the plaintiff, and Robert Grayson, as to the plaintiff having an interest in the mine. I do not know what the interest was that Mr. Coughanour had. I know what interest was discussed when the conversation took place with reference to the interest which Mr. Coughanour should have under conditions in the future. . . . . I would answer that by saying that Mr. Robert Grayson was anxious to have a report from Mr. Coughanour and to know his advice as to the values of the mine as an element entering into the question of whether or not he should purchase it. . . . . Robert Grayson and the plaintiff were together shortly after the receiver's sale, and after they came here from Idaho City to Boise City. They were discussing the sale of the receiver of the Gold Hill property. They discussed the question of the purchase of the mine and the interest which Mr. Coughanour was to have under certain conditions, during that conversation. This was in my presence. . . . . Finally Robert Grayson said to Mr.

Coughanour that he should have a one-seventh interest, and that they should join together in the matter upon that basis, Mr. Grayson stating that he would carry that interest for Mr. Coughanour and it should be a one-seventh interest after Robert Grayson had paid the expenses of the purchase and the expenses which were incurred in putting the mine upon a paying basis so it would take care of its indebtedness, and Mr. Coughanour stated that that would be satisfactory to him. I cannot recollect the exact language which was used, but the one-seventh interest was passed upon as the interest which Mr. Coughanour had or claimed to have had in the mine, and the aid which he had given Mr. Robert Grayson in giving him information in regard to the mine.''

Judge Richards testified for the plaintiff as follows:

''There seemed to be a great deal of feeling on the part of Mr. David Coughanour that I had not permitted him to take the property from his bid without any payment. It caused considerable talk, and in this conversation Mr. Grayson stated that Mr. Wm. Coughanour had been of great service in reporting on the property and giving information about it, and that they had agreed to carry him for a one-seventh interest, the same as he had formerly in the property. I could not recall the language, but I do remember the substance.''

It will serve no beneficial purpose to quote further from the evidence in this case. From it the trial court found as follows:

''That there was an oral contract between the plaintiff and the defendant whereby the defendant agreed to convey to the plaintiff a certain interest in all of the above-described property, and in the event the claims were worked by the said defendant that the defendant would pay plaintiff a certain share of the proceeds derived from the workings of said claims, or in the event said claims were sold, the defendant would pay plaintiff an amount of the proceeds of the sale equivalent to the interest which the plaintiff was to have in said property less the proportionate amount of the expenses made by the defendant on account of said claims. That said

oral agreement related to a conveyance of an interest in real property and was never reduced to writing or signed by either of the parties thereto.''

The court also found that there was nothing done by plaintiff in pursuance of said oral agreement that would operate as a part performance of said oral agreement. This latter finding is clearly against all of the evidence offered. The evidence shows beyond a reasonable doubt that the agreement between the Graysons and Coughanour was to the effect that Coughanour should have a one-seventh interest in said mining claims or net profits, or in case of a sale, a one-seventh interest in the net proceeds of the sale, in consideration of the services that he rendered in said matter. As above stated, he made a detailed report on the mines and their workings for seventeen years or more, the output of the mine during that time, the extent of the tunnels and the workings of the mine, its condition, the product of the mine during that time, the dividends that had been declared and everything pertaining to the workings of that mine that was known to the plaintiff or in his possession. It appears that he thus paid full value for the one-seventh interest that this action is brought to recover. As the plaintiff paid only $4,500 for said mines, one-seventh of that amount would be $642.85, and we have no doubt that the services of Mr. Coughanour were worth at least that amount to the respondent. Regardless of that fact, the plaintiff paid in full for the one-seventh interest in said claims, and respondent cannot now defeat his claim by pleading the provisions of said sec. 6007, for the reason that sec. 6008 declares that the provisions of said sec. 6007 must not be so construed as to abridge the power of any court to compel the specific performance of an agreement in case of part performance thereof. There was full performance of said agreement on the part of the plaintiff. He has paid the full price for a one-seventh interest in said mines or the proceeds thereof, and the respondent will not be permitted to retain the purchase price and also said interest.

The judgment is therefore reversed and the cause remanded, with instructions to the trial court to grant a new trial for

the purpose only of ascertaining the net proceeds received by the defendant in the working and sale of said property and to enter judgment in favor of the appellant for one-seventh of said net proceeds.

Costs of this appeal are awarded to the appellant.

Stewart, C. J., and Ailshie, J., concur.

Petition for rehearing denied.